WILLIE L. COULTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coulter v. Commissioner
Docket No. 9933-90.
United States Tax Court
T.C. Memo 1992-224; 1992 Tax Ct. Memo LEXIS 254; 63 T.C.M. (CCH) 2773; April 15, 1992, Filed *254 Decision will be entered under Rule 155. Willie L. Coulter, pro se. Harris L. Bonnette, Jr., for respondent. DAWSON; PATE
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Joan Seitz Pate pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PATE, Special Trial Judge: In a notice of deficiency dated February 14, 1990, respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: 1983
1984
1985
Deficiency
$ 1,199
$ 8,677
$   782 Additions to Tax
Sec. 6651(a)(1)
--
--
[1] (699)
Sec. 6653(b)(1)
4,302
4,376
3,564 Sec. 6653(b)(2)
[2]
[2]
[2] Sec. 6654
304
--
-- Sec. 6661
1,665
2,188
1,577 *255 Willie L. Coulter (hereinafter petitioner) resided in Austin, Texas, at the time he filed his petition. The Stipulation of Facts and attached exhibits are incorporated herein by this reference. In addition, the parties orally stipulated that petitioner was married during all of the years in issue. Consequently, as a resident of Texas, he need take into account only one-half of his wages in computing his gross income. It follows that he also must use married filing separately rates. Sec. 1(d). The parties also have orally stipulated that petitioner is not entitled to the dependency exemptions he claimed for his children for all years in issue because he did not provide more than one-half of their support. Sec. *256 152(a). Further, respondent concedes that, in determining petitioner's deficiency for 1984, she took into account only $ 75.36 as the amount of tax liability reported by petitioner, whereas the correct amount is $ 7,536. Because of the aforementioned stipulations and concessions, all of the amounts determined in the notice of deficiency will have to be recomputed under Rule 155. The issues remaining for our decision are: (1) Whether petitioner is liable for the additions to tax for fraud for 1984 and 1985; (2) whether petitioner is liable for the additions to tax for substantial understatement of income tax for all 3 years in issue; and (3) whether petitioner is liable for an addition to tax for failure to pay estimated tax for 1983. FINDINGS OF FACT Petitioner was employed by the Aluminum Company of America (hereinafter Alcoa) from 1963 until 1987. He timely filed joint Federal income tax returns with his wife for the years 1978 through 1982, reporting thereon, inter alia, his wages, his Federal income tax withheld, and, after subtracting the applicable income tax, the refund he claimed was due. In 1983, petitioner became involved in a tax protester movement. As a result, *257 he did not timely file income tax returns for 1983, 1984, and 1985, despite the fact that he earned wages at Alcoa of $ 36,597, $ 38,174, and $ 34,280, respectively. Petitioner finally filed Form 1040A for 1983, 1984, and 1985, on April 3, 1987, computing his tax using single rates. On each form, he attached a statement in which he claimed that he was not liable for the tax but was filing such form because he had been coerced by respondent. Alcoa withheld Federal income taxes from petitioner's wages of $ 1,943, $ -0-, and $ 822, for 1983, 1984, and 1985, respectively. This was the result of petitioner's submission to Alcoa of three revised Forms W-4. On May 31, 1983, petitioner submitted a Form W-4 stating that he did not expect to owe any income tax for 1983, and that he was exempt from withholding. Subsequently, he submitted another Form W-4, in which he stated that he did not owe any income tax for 1983 and did not expect to owe any income tax for 1984. On March 19, 1985, petitioner submitted yet another Form W-4, in which he stated that he did not owe any income tax for 1984 and did not expect to owe any income tax for 1985. During the years in issue, petitioner corresponded *258 with the Internal Revenue Service (hereinafter the IRS) regarding his liability for Federal income taxes. For instance, on November 9, 1983, he asked for certain information concerning the constitutional rights of private citizens with respect to the tax laws. On December 3, 1983, the IRS responded, informing petitioner that: (1) The Federal income tax law does not violate an individual's constitutional rights; (2) the requirement of filing a return does not violate an individual's Fifth Amendment privilege against self-incrimination, nor does it violate the Fourth Amendment prohibition against unreasonable searches and seizures; and (3) the Fifth Amendment does not relieve taxpayers of the obligation to permit IRS agents to examine their records to verify the correctness of income and deductions reported. On February 8, 1984, the IRS notified petitioner it was reviewing the Form W-4 he had submitted to Alcoa on May 31, 1983. It attached a questionnaire designed to determine whether petitioner was eligible for exempt status. Petitioner returned this questionnaire to the IRS writing thereon "Object 4th and 5th Amendment" and "Object 16th Amendment" instead of providing the requested *259 information. He failed to disclose his total income, total tax, and other relevant information. He also attached a letter maintaining that he expected a full refund of all income taxes withheld from his wages, and alleging that his due process rights had been violated. In addition, petitioner corresponded with Alcoa. On January 16, 1984, he asked them to discontinue withholding income taxes. A tax attorney for Alcoa responded, notifying petitioner that Alcoa could not discontinue withholding income taxes from his wages as such action would "go against the clear weight of authority". Toward the end of 1983, a special agent with the Criminal Investigation Division (hereinafter CID) notified petitioner of a pending investigation of his tax liability for 1983. By letter dated December 14, 1984, CID notified petitioner that the investigation indicated that petitioner failed to file an income tax return for 1983 and had submitted a false Form W-4 to his employer. Yet, at a formal interview held on January 9, 1985, to ascertain the facts of the matter, petitioner advanced only tax protester arguments; he offered no explanation of his actions. Petitioner was indicted for the willful *260 evasion of income taxes and willfully supplying false and fraudulent Forms W-4 in violation of section 7201 for all 3 years. He pled guilty to one count of evasion for 1983; prosecution as to the other years was dropped. On November 2, 1987, petitioner was sentenced to 5 years (the first 6 months to be served and the balance to be suspended), plus a fine of $ 10,000. OPINION Fraud
In the notice of deficiency, respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983, 1984, and 1985. Petitioner concedes that he is liable for 1983, but not for 1984 and 1985. Section 6653(b)(1) provides that, if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Section 6653(b)(2) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to fraud. The existence of fraud is a question of fact to be determined from the entire record. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); *261 Grosshandler v. Commissioner, 75 T.C. 1 (1980); Stratton v. Commissioner, 54 T.C. 255 (1970), modified by 54 T.C. 1351 (1970). Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b); Levinson v. United States, 496 F.2d 651, 654-655 (3d Cir. 1974); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982). Respondent's burden may be met by showing both that an underpayment of tax exists and that the taxpayer intended to conceal, mislead, or otherwise prevent the Commissioner from collecting the tax owed. Korecky v. Commissioner, 781 F.2d 1566 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63; Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). For purposes of section 6653(b), fraud means an "actual, intentional wrongdoing", the intentional commission of an act or acts *262 for the specific purpose of evading a tax believed to be owing. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256-257 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Fraud is never presumed or decided on the basis of suspicion; rather, it must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85 (1970). Fraud, however, may be inferred from any conduct, the effect of which would be to mislead, conceal, or otherwise prevent the collection of taxes, or where an entire course of conduct establishes the necessary intent. Spies v. United States, 317 U.S. 492, 499 (1943); Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Stone v. Commissioner, 56 T.C. 213 (1971). The section 6653(b) addition to tax for fraud has been imposed in a number of cases where the taxpayer *263 submitted false Forms W-4 to his employer and then filed tax protester returns or did not file any returns at all. See, e.g., Miller v. Commissioner, 94 T.C. 316, 334 (1990); Rowlee v. Commissioner, supra. In one of these cases, Castillo v. Commissioner, 84 T.C. 405 (1985), the taxpayer failed to file income tax returns for 1975 through 1978. Prior to his nonfiling, the taxpayer had a history of properly filing tax returns. Before the income tax return for 1975 was due, he submitted a false Form W-4 claiming 18 withholding allowances, although he was not entitled to more than 4. On two subsequent occasions, he submitted Forms W-4 claiming exempt status. As a result, only a minimal amount of income tax was withheld. Under those facts, we reasoned that: Respondent has affirmatively shown various indicia of fraud. Petitioner did not file Federal income tax returns for the taxable years 1975, 1976, 1977, and 1978. While the failure to file tax returns, even over an extended period of time, does not per se establish fraud ( Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980)), the failure to file *264 returns is persuasive circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977); Stoltzfus v. United States, supra at 1005. Further, when petitioner's failure to file returns for the taxable years 1975, 1976, 1977, and 1978 is viewed in light of his previous filing of Federal income tax returns for the taxable years 1964 through 1972 and 1974, petitioner's inaction weighs heavily against him. * * * Petitioner also filed false W-4 Forms to reduce or stop the withholding of Federal income taxes from his wages during the taxable years at issue. Such activities are indicative of an attempt to evade the payment of income taxes. Rowlee v. Commissioner, supra at 1125; Habersham-Bey v. Commissioner, 78 T.C. 304, 313-314 (1982). Finally, where a taxpayer's failure to file is predicated on frivolous arguments and where respondent has shown substantial amounts of unreported income on which withholding has been reduced or prevented by the submission of false Form W-4 certificates, we have repeatedly held that fraud has been established by clear and convincing evidence *265 justifying the addition to tax under section 6653(b). See, e.g., Rowlee v. Commissioner, supra at 1123-1126; * * *; Habersham-Bey v. Commissioner, supra at 313-314. We reach the same conclusion in this case. * * * [Castillo v. Commissioner, supra at 409-410.]
So, too, in this case, petitioner submitted three Forms W-4 to Alcoa in which he stated, under penalties of perjury, that he was exempt from withholding for the years at issue. In conjunction therewith, petitioner ceased filing income tax returns. He began filing returns again only after being contacted by respondent. Petitioner chose this course of action despite the fact that he had a prior history of filing timely and complete income tax returns. Nevertheless, petitioner argues that he is not subject to the additions to tax for fraud because he was taken in by a tax protester promoter and honestly believed that he was not subject to the tax, especially when the Government did not respond to their arguments. See Cheek v. United States, 498 U.S.    , 111 S. Ct. 604 (1991). However, the evidence shows that petitioner received *266 a letter from the IRS on December 3, 1983, informing him that the Federal income tax law was constitutional in all the respects he had questioned. Moreover, in the beginning of 1984, he was informed by his employer that he was subject to the withholding and filing requirements. This correspondence took place before the income tax returns for the years 1984 and 1985 were due to be filed, those years for which we must decide whether the addition to tax for fraud is applicable. Moreover, petitioner's subsequent filing of returns for 1983, 1984, and 1985, does not preclude us from imposing additions to tax for fraud. Later repentant behavior does not absolve a taxpayer of his antecedent fraud. Badaracco v. Commissioner464 U.S. 386, 394 (1984); Miller v. Commissioner, 94 T.C. at 337. Therefore, we hold that petitioner's submission of false Forms W-4, coupled with his failure to file timely income tax returns for 1983, 1984, and 1985, constituted fraudulent attempts to evade the payment of his income taxes. Substantial Understatement of Income Tax
We must also decide whether petitioner is liable for an addition to tax under section *267 6661(a) for a substantial understatement of income tax for 1983, 1984, and 1985. Section 6661(a) provides that "If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement". DiLeo v. Commissioner, 96 T.C. 858, 876 (1991), affd.     F.2d     (2d Cir., Mar. 20, 1992); Pallottini v. Commissioner, 90 T.C. 498, 501-503 (1988). Therefore, in order to determine whether petitioner is liable for the additions to tax, we must first determine whether he has a substantial understatement of income tax. The term "understatement" is defined in section 6661(b)(2) as the excess of: (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return * * * .
In determining the amount of tax "shown on the return", section 1.6661-2(d)(2), Income Tax Regs., provides that: the amount of tax shown on the return for the taxable year is determined * * * without regard to any amount of additional tax shown on a return (including *268 an amended return, so-called) filed after the taxpayer is first contacted by * * * [respondent] concerning the tax liability of the taxpayer for the taxable year. * * *
We considered the impact of this regulation when an income tax return is filed after the due date and after the taxpayer has been contacted by respondent in Hesselink v. Commissioner, 97 T.C. 94, 100-101 (1991). There, we reasoned that: The language of section 6661 is * * * unclear and lacking in guidance as to how the section 6661 addition to tax is to apply to "no-return," to "amended return", and to "late-return" situations. * * * * * * where a taxpayer files an amended or a late tax return after being contacted by respondent with regard to his or her tax liability for a year, the regulations reasonably treat the taxpayer as not having "shown" a tax liability on the return, since it was respondent's contact, not the taxpayer's voluntary act, that may be presumed to have precipitated the filing of the amended or late return and that indirectly caused a tax liability to be "shown" on the return.
Petitioner filed his Forms 1040 for 1983, 1984, and 1985, after their respective *269 due dates and only after having been contacted by respondent. In fact, he attached a statement to each form stating that he was filing such returns because of coercion by respondent. Consequently, the amount of tax "shown on the return" for purposes of determining the amount of petitioner's understatement for each year is deemed to be zero. We must next determine whether petitioner substantially understated his income tax for each year in issue. A substantial understatement of tax occurs only if the understatement exceeds the greater of 10 percent of the tax required to be shown on the return of $ 5,000. Sec. 6661(b)(1)(A). Since the issuance of the notice of deficiency, the parties have agreed that petitioner need only include one-half of his wages in his gross income and must use married-filing-separately rates. Consequently, petitioner's income tax for the years in issue must be recomputed to reflect the parties' agreement. Without getting into the mechanics of such recomputation, it appears that petitioner's understatement for each of the years in issue will be less than $ 5,000. If so, petitioner's understatement will not constitute a "substantial understatement", and, *270 therefore, he will not be liable for the addition to tax under section 6661. If, however, petitioner's recomputed tax amount exceeds $ 5,000 for any year, petitioner will have substantially understated his tax and will be liable for the addition to tax under section 6661 for that year. Under such circumstances, we also note that petitioner's withholding credits must be subtacted from the "understatement" to arrive at the "amount of any underpayment" in order to recalculate the addition to tax under section 6661. Woods v. Commissioner, 91 T.C. 88, 99 (1988). Failure to Pay Estimated Tax
Respondent determined that petitioner is liable for an addition to tax under section 6654 for 1983. The addition to tax for failure to pay estimated tax under section 6654 as to the year at issue is mandatory unless the taxpayer can demonstrate that he comes within one of the computational exceptions set forth in section 6654(e). Baldwin v. Commissioner, 84 T.C. 859, 871 (1985); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Because petitioner did not present any evidence to establish that he comes within any of the computational *271 exceptions, we hold that he is liable for the addition to tax for failure to pay estimated taxes for 1983. Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Because respondent determined that for 1985 petitioner is subject to the addition to tax for fraud, she abated the sec. 6651(a)(1) addition to tax previously assessed. Sec. 6653(d). ↩
2. 50 percent of the interest that is computed on the portion of the underpayment which is attributable to fraud.↩